[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 08-14137

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 10, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 05-00108 CV-3-RV-MD

DELTA HEALTH GROUP INC.,

Plaintiff-Appellant
Cross-Appellee,

versus

ROYAL SURPLUS LINES INSURANCE COMPANY,
a Foreign Corporation,

Defendant-Appellee
Cross-Appellant.

_____

Appeal from the United States District Court
for the Northern District of Florida

_____

(June 10, 2009)

Before WILSON and ANDERSON, Circuit Judges, and GOLDBERG,* Judge.

PER CURIAM:

_____

*Honorable Richard W. Goldberg, United States Court of International Trade Judge,
sitting by designation.

Appellant and Cross-Appellee Delta Health Group Inc. ("Delta") appeals from a jury verdict largely in favor of its insurer, Appellee and Cross-Appellant Royal Surplus Lines Insurance Company ("Royal"), in a suit concerning the scope of Royal's duty to defend and indemnify Delta under various insurance agreements between Delta and Royal. Delta and Royal also each appeal from the district court's order denying their respective motions for attorney's fees following the jury's verdict. For the reasons described below, we affirm the district court's denial of attorney's fees to both parties, and we affirm with respect to Delta's appeal and also with respect to Royal's cross-appeal.

## FACTS

Delta owns, operates, and manages nursing home facilities in several states. Royal is an insurance company that issued two professional healthcare liability insurance policies to Delta ("Royal Primary policies"). Following the expiration of the second Royal Primary policy, Delta obtained primary policy coverage from Lexington Insurance Company ("the Lexington policy"). The Lexington policy required the satisfaction of a $50,000 self-insured retention before the Lexington policy would provide coverage. Also, in the Lexington policy, defense costs eroded the $3 million aggregate limit. Royal also issued two umbrella policies to Delta, which afforded excess coverage above Delta's primary policies ("Royal

2

Umbrella policies"). Because the Lexington policy did not provide sufficient primary coverage under the terms of the second Royal Umbrella policy, Royal and Delta negotiated an amendment to the second Royal Umbrella policy under which, in the event that the Lexington policy was exhausted, Delta was required as a self-insured to provide coverage for the first $1,000,000 per occurrence, and to provide its own defense costs before the Royal Umbrella policy would take effect.

Numerous people filed suit against Delta for alleged injury at the hands of Delta employees or agents. Many of the claims implicated the periods covered by the Royal Primary policies and the periods covered by the Lexington policy and Delta's self-insurance. For those claims implicating the Royal Primary policies and the Lexington policy, Delta and Royal agreed to share defense costs until Delta satisfied the $50,000 self-insured retention requirement under the Lexington policy. Royal and Lexington then shared defenses costs until the exhaustion of the Lexington policy. After the exhaustion of the Lexington policy, Delta and Royal again shared the costs of defending the underlying suits. Delta and Royal also shared settlement payments for underlying claims involving injuries occurring after the exhaustion of the second Royal Primary policy.

Delta brought suit in 2005 against Royal, seeking declaratory judgment that Royal owed Delta a complete defense on all of the underlying claims and

repayment of the defense costs Delta had expended under the cost-sharing agreements. Delta later added a claim for indemnification for the amounts that Delta had contributed to settlement. Royal counter-claimed, alleging that the Royal Primary policies required Delta to pay a $50,000 deductible for each claim, and that Delta had refused to pay the deductible in many cases.

This case went to jury trial in the Northern District of Florida. At the beginning of trial, the district judge ruled as a matter of law that Royal owed Delta a complete defense in all of the underlying cases. The jury found, however, that Delta had validly agreed to share costs in the defense of all of the cases. The jury also found that Royal should have indemnified Delta for the settlement costs of only one of the underlying cases. Because the parties had earlier stipulated that Delta owed Royal unpaid deductibles, the district court determined that Delta owed Royal over $700,000 in unpaid deductibles on Royal's counterclaim after subtracting the indemnification amount Royal owed Delta under the jury's verdict. Both parties then moved for attorney's fees. The district court declined to assign any attorney's fees. Delta has appealed the jury verdict and the denial of its motion for attorney's fees. Royal has cross-appealed the denial of its motion for its attorneys fees, and has alleged error in the presentation of the indemnification issue to the jury.

4

STANDARD OF REVIEW

We review the district court's decision regarding the award of attorney's fees for abuse of discretion, "revisiting questions of law de novo and reviewing subsidiary findings of fact for clear error." Atlanta Journal & Constitution v. City of Atlanta Dep't of Aviation, 442 F.3d 1283, 1287 (11th Cir. 2006).

Regarding Delta's allegations of error at trial, "[w]e apply a deferential standard of review to a district court's jury instructions. If the instructions accurately reflect the law, the trial judge is given wide discretion as to the style and wording." Wright v. CSX Transport. Inc., 375 F.3d 1252, 1256 (11th Cir. 2004). Furthermore, "[w]e will not disturb a jury's verdict unless the charge, taken as a whole, is erroneous and prejudicial." Mosher v. Speedstar Div. of AMCA Int'l, 979 F.2d 823, 824 (11th Cir. 1992).

DISCUSSION

A. Attorney's Fees

After trial, Delta and Royal both moved for attorney's fees, each claiming to be the prevailing party in the suit. Delta moved for attorney's fees pursuant to Fla. Stat. § 627.428(1).[1] Delta argued it received judgment for purposes of §

---

[1] Fla. Stat. § 627.428(1) provides: "Upon the rendition of a judgment or decree by any of the courts of this state against an insurer and in favor of any named or omnibus insured or the named beneficiary under a policy or contract executed by the insurer, the trial court or, in the

5

627.428(1) because Delta prevailed in its claim for declaratory judgment that Royal owed Delta a duty to defend, and because Delta prevailed on indemnification for settlement costs in one of the thirty-six underlying suits. Royal moved for attorney's fees pursuant to a provision in the first Royal Primary policy between Delta and Royal, which provided for attorney's fees if Royal was required to take action to seek payment of deductibles owed by Delta,[2] because Royal succeeded in its counter-claim against Delta for unpaid deductibles.

The district court held that both parties would be entitled to attorney's fees under their respective theories. The district court found, however, that the fees owed to each side could not be significant. The district court also determined that the attorney's fees would result in a "wash," and neither party could truly be deemed "prevailing" for the purpose of awarding attorney's fees. The district court accordingly declined to grant attorney's fees to either party. Both parties appeal the district court's determination and seek attorney's fees from this Court.

event of an appeal in which the insured or beneficiary prevails, the appellate court shall adjudge or decree against the insurer and in favor of the insured or beneficiary a reasonable sum as fees or compensation for the insured's or beneficiary's attorney prosecuting the suit in which the recovery is had."

[2] The provision in the first Royal Primary policy providing for attorney's fees states: "If you do not promptly reimburse us for any deductible amount, then any cost incurred by us in collection of the deductible amount will be added and applied in addition to the applicable deductible amount without limitation. These costs include, but are not limited to, collection agency fees, attorney's fees and interest."

6

### 1. Public Policy Argument

Delta argues that the district court erroneously concluded that Royal could be entitled to attorney's fees. Delta argues that the attorney's fees provision of the first Royal Primary policy violates Florida public policy reflected in Fla. Stat. § 627.428. Accordingly, Delta argues that the attorney's fees provision in the first Royal Primary policy should be declared invalid. If Delta were correct in this argument, Delta would then receive attorney's fees because there would no longer be an entitlement to attorney's fees by Royal to "wash" Delta's entitlement to attorney's fees.

Delta's argument that the attorney's fees provision of the first Royal Primary policy violates Florida public policy is premised upon the Florida Supreme Court's statement that "the purpose of this provision [§ 627.428] is to level the playing field so that the economic power of insurance companies is not so overwhelming that injustice may be encouraged because people will not have the necessary means to seek redress in the courts." Ivey v. Allstate Ins. Co., 774 So. 2d 679, 684 (Fla. 2000). The statute has been declared a "one-way street," Danis Indus. Corp. v. Ground Improvement Techniques, Inc., 645 So. 2d 420, 421 (Fla. 1994), and insurers may not collect attorney's fees under § 627.428. Id. According to Delta, if insurers are allowed to place fee provisions in insurance policies allowing for

7

insurers to seek attorney's fees, then the non-reciprocal fee statute of § 627.428 would be rendered impotent, and by implication the purpose of leveling the playing field would be undermined.

Delta is incorrect that the provision concerning attorney's fees in the first Royal Primary policy is against public policy. We need not, and do not, express an opinion as to whether it would violate Florida public policy for an insurance policy to provide for fees for the insurer any time that an insured sues the insurer and loses. The instant policy provision does not allow the insurer to collect attorney's fees whenever the insured loses a litigated case on a claim for coverage. Instead, the provision applies only where the insurer must sue the insured in order to collect a deductible that the insured was obligated to pay and failed to pay. In contrast, § 627.428 addresses the concern that insurers will contest valid claims by their insureds, and that insureds will be forced to take legal action to seek payment. Danis Indus., 645 So. 2d at 421. We hold that this limited provision in the first Royal Primary policy does not violate the public policy expressed in § 627.428 because the instant insurance contract provision does not pertain to the issue contemplated by § 627.428. Therefore, it was not an abuse of discretion for the district court to find that Royal was entitled to attorney's fees under the terms of the insurance contract for the amounts expended in seeking the payment of

deductibles owed.[3]

2. District Court's Order Denying Attorney's Fees

Both parties challenge the district court's determination that the attorney's fees incurred by either side in earning their respective victories could not have been significant, and that the amounts owed would result in a "wash." The district court essentially perceived the case as involving two major issues. The first was whether Royal owed a duty to provide a full and complete defense as a matter of insurance policy interpretation. Delta prevailed on this issue as a matter of law. The second major issue was whether Delta knowingly and voluntarily engaged in defense cost sharing. Royal prevailed on this issue before the jury. The district court apparently assumed that most of the attorney time was expended on these two issues, and thus Delta's entitlement to fees for winning the policy interpretation issue was discounted by its loss on the cost-sharing issue. Florida law allows the district court to discount Delta's entitlement to attorney's fees under § 627.428 based on the fact that Delta lost on the second major issue in the case. See Danis Indus., 645 So. 2d at 421 ("[T]he trial court, in determining the fee award, may take into account the fact that the insured or beneficiary has not prevailed on all issues . . .").

---

[3] Delta's request that this Court certify a question to the Florida Supreme Court is accordingly DENIED.

9

Therefore, any fees to which Delta would have been entitled would not have been significant.

Furthermore, the district court pointed out that the deductible issue, on which Royal prevailed, and the only issue with respect to which Royal was entitled to attorney's fees, "was stipulated and not really at issue in the case." Therefore, any fees to which Royal would have been entitled also would not have been significant. The district court concluded that the fees to which Delta would have been entitled and the fees to which Royal would have been entitled would "wash" out. We cannot conclude that the district court's findings of fact on this issue are clearly erroneous or that its decision is an abuse of discretion. Atlanta Journal & Constitution, 442 F.3d at 1287. Accordingly, we affirm the district court's decision not to award attorney's fees to either party. Thus, we reject Delta's argument in its appeal, and we reject Royal's argument in its cross-appeal.

B. Jury Instructions

1. Burden of Proof

Because the district court found, as a matter of law, that Royal had the duty to provide a complete defense to Delta, Royal then had the burden of proving that Delta had entered into the cost-sharing agreements knowingly and voluntarily in order to alter Royal's duty to defend Delta. Delta argues that the jury instructions

10

erroneously shifted from Royal to Delta the burden of proof on the issue of whether the cost-sharing agreements were knowing and voluntary. Delta challenges the following language from the jury instructions: "It is Delta's burden to demonstrate that the cost-share agreements were coerced or made under duress, and not knowingly and voluntarily entered into." While this instruction probably was intended to say only that Delta had the burden of proof on coercion, we entertain the possibility that the jury may have read it to imply that Delta also had the burden of proof with respect to whether Delta knowingly and voluntarily entered into the cost-sharing agreement. We assume arguendo, therefore, that the instruction was erroneous. Nevertheless, we conclude that the instruction was harmless because it was clear from the evidence presented at trial that the cost-sharing agreements were entered into voluntarily. Significantly, Delta made only two arguments at trial to indicate that the agreements were not actually knowing and voluntary: first that Delta was misled by Royal's misrepresentations (i.e. silence in the face of a duty to speak), and second that Delta was coerced into continuing the agreements. Delta conceded at oral argument that it bore the burden of proof with respect to both of those arguments. Accordingly, even if the challenged instruction erroneously implied that Delta had the burden of proof on knowledge and voluntariness, it was harmless error.

## 2. Consideration

Delta also argues that the district court erred by failing to give an instruction on whether there was adequate consideration to support the cost-sharing agreements between Delta and Royal. Consideration is only required to rise to the level of a peppercorn. See Ashby v. Ashby, 651 So. 2d 246, 247 (Fla. Dist. Ct. App. 1995) ("It is axiomatic that a promise, no matter how slight, can constitute sufficient consideration so long as a party agrees to do something that they are not bound to do"). In this case, there was overwhelming evidence of consideration in the fact that Royal forbore from filing a declaratory judgment action to resolve the disputed issue of whether Royal owed a duty to provide a full and complete defense without cost sharing. See Citibank Int'l v. Mercogliano, 574 So. 2d 1190, 1191 (Fla. Dist. Ct. App. 1991) ("It is well settled Florida law that forbearance from pursuing a legal remedy, where the promisee has a bona fide belief that a viable legal right exists, constitutes valid consideration for an agreement which benefits the promisor"); Baron Oil Co. v. Nationwide Mut. Fire Ins. Co., 470 So. 2d 810, 815 (Fla. Dist. Ct. App. 1985) ("An insurer obviously can have the court determine its obligation to defend by filing a declaratory judgment action"). Alternatively, there was obvious consideration for the cost-sharing agreements in that they resolved the disputed and uncertain legal issue of whether Royal was required to

12

provide Delta with a complete defense under Florida law. Therefore, any error of the district court in not instructing the jury on consideration was harmless.[4]

C. Royal's Challenge to the Indemnification Issue

In its cross-appeal, Royal contends that the court should not have permitted Delta to bring its claims for indemnity to trial because indemnity was not pled and because it was not included in the motion for summary judgment. Delta included its claim for indemnity in the joint pretrial stipulation that was adopted by the district court in its pretrial order. The pretrial order supersedes the pleadings. Jackson v. Seaboard Coast Line R.R. Co., 678 F.2d 992, 1012 (11th Cir. 1982). Therefore, the pretrial order added the issue of indemnification to the issues to be tried, and Royal was on notice that indemnification would be tried. Accordingly, Royal's argument on this issue is rejected.

CONCLUSION

For the foregoing reasons, the district court's judgment is affirmed in all respects.

AFFIRMED

---

[4] The other arguments on appeal by Delta, including its further challenges to the jury instructions, its challenge to the district court's supplemental instruction, and its challenge to the introduction of evidence, are rejected without need for further discussion.